IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| YVONNE BULLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 3:13-cv-1093 |
| vs. ) | |
| ) | |
| SOUTH BEND COMMUNITY, ) | |
| SCHOOL CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on the Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaim, filed by the plaintiff, Yvonne Bullock, on August 29, 2014. (DE #18.) For the reasons set forth below, the motion is **DENIED**.

BACKGROUND

Plaintiff, Yvonne Bullock ("Plaintiff"), filed her Complaint against Defendant, South Bend School Corporation ("Defendant"), on October 10, 2013. (DE #1.) The Complaint alleges the following claims: Count I, Violation of Title VII: Race Discrimination; Count II, Violation of

1

Title VII: Gender Discrimination; Count III, Violation of the Equal Pay Act; Count IV, Violation of Title VII: Retaliation; Count V, Violation of the Fair Labor Standards Act: Retaliation; Count VI, Violation of the False Claims Act: Retaliation; and Count VII, Breach of Contract. (*Id.*) Defendant filed its Answer on November 11, 2013, which included a counterclaim against Plaintiff alleging a breach of a settlement contract. (DE #10.) On August 29, 2014, Plaintiff filed the instant Motion for Summary Judgment as to Defendant's counterclaim. (DE #18.) Defendant filed its response in opposition on September 25, 2014. (DE #21.) Plaintiff did not file a reply. The motion is ripe for adjudication.

DISCUSSION

*Summary Judgment Standard*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate;

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013)(citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). A party opposing a properly supported summary judgment motion may not rely on allegations or denials in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the non-moving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

*Material Facts*

Defendant employed Plaintiff as the Executive Director of Instruction and Curriculum from April 18, 2011, to June 30, 2012. (Aff. Bullock, DE #19-2, ¶ 1.) On October 10, 2012, Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant engaged in gender and racial discrimination with regard to her employment. (DE #19-4.) The parties agreed to participate in a mediation session conducted by the EEOC. (Aff. Bullock, DE #19-2, ¶¶ 3,4; DE #19-5, p. 1.) On August 26, 2013, the mediation was held at the EEOC's Indianapolis District Office and was facilitated by EEOC investigator, William Rogers ("Rogers"). (Aff. Bullock, DE #19-2, ¶ 4; DE #19-5, pp. 1-3.) Plaintiff was not represented by counsel before or during the mediation session; the EEOC, on the other hand, was represented by attorney Lyle Hardman. (Aff. Bullock, DE #19-2, ¶ 5.)

Prior to the mediation, Plaintiff provided Rogers with a written settlement demand that included both financial and qualitative terms. (Aff. Bullock, DE #19-2, ¶ 6; DE #19-6, pp. 1-2.) At the mediation, the parties exchanged proposals but ultimately left the mediation session after failing to come to an agreement. (Aff. Bullock, DE #19-2,

4

¶¶ 9-10; Dep. Rogers, DE #19-7, pp. 6-9; DE #19-5, p. 2.) During the mediation, Plaintiff did not wish to accept a proposal without financial compensation, and Defendant would only negotiate with qualitative demands. (Aff. Bullock, DE #19-2, ¶ 8; Dep. Rogers, DE #19-7, pp. 6-9.) The parties appeared to Rogers to have reached a stalemate, and Rogers dismissed Defendant. (Dep. Rogers, DE #21-2, pp. 13, 15.) Rogers then informed Plaintiff that Defendant's last offer would likely remain on the table. (*Id.* at 16.)

Shortly after the mediation concluded, Plaintiff left Rogers a voicemail urging him to call her back right away, so he did. (Aff. Bullock, DE # 19-2 ¶ 12; Dep. Rogers, DE #19-7, ¶¶ 1-9.) The content of their subsequent phone communication is largely disputed.

Plaintiff maintains that, during the phone call, she told Rogers that she would only agree to qualitative terms with Defendant as an "intermediate step" towards reaching a settlement. (Aff. Bullock, DE #19-2, ¶ 12.) Defendant, on the other hand, presents testimony from Rogers who states that Plaintiff agreed to accept Defendant's last offer exactly as it was previously communicated to her during the mediation session and to settle all of her claims. (Dep. Rogers, DE #21-2, pp. 17-19.)

5

Additionally, Plaintiff asserts that she definitively told Rogers that she would not agree to a final settlement without financial compensation. (Aff. Bullock, DE #19-2, ¶ 12.) However, Rogers testified that Plaintiff was willing to "take the offer where they would expunge her records, [provide a] neutral reference [and] I believe make Mr. Roggeman the central point of contact." (Dep. Rogers, DE #21-2, p. 17.) Rogers stated he specifically clarified with Plaintiff that Defendant's offer did not involve financial compensation and that Plaintiff understood this issue and agreed to it. (*Id.*) Rogers testified that Plaintiff was insistent that he immediately call Defendant to express her willingness to settle:

> [s]he insisted that I contact the respondent at – the respondent's counsel that day and inform them that she was going to take the offer. . . . Ms. Bullock expressed to me when I talked to her – when I answered the voice mail message, she expressed to me that she wanted – she wanted to take the settlement before and wanted me to call – the urgency of the call before they went back up to South Bend because she felt if they would have gotten to South Bend, that the superintendent of the school would not allow them to accept the offer that she was going to take.

(*Id.* at 18, 20.)

After the phone call, Rogers contacted Defendant's counsel regarding his discussion with Plaintiff. (Dep.

6

Rogers, DE #19-7, pp. 12-13.)  According to Rogers, Defendant's counsel reacted as follows:

> A   He said—he said a phrase and—and words to the effect, "You're kidding me?"  And I told him no, that that's what she would do.
> Q   And his response to that?
> A   He would—he would draw up the settlement agreement.

(*Id*. at 13.)

Thereafter, Rogers called Plaintiff back; the content of this phone call is also disputed.  Plaintiff asserts that Rogers informed her Defendant would provide her with non-monetary consideration.  (Aff. Bullock, DE #19-2, ¶ 13.)  However, Defendant presents evidence that Rogers did not discuss any specifics during this phone call.  (Dep. Rogers, DE #21-2, p. 40.)  Instead, Rogers stated:

> I called her back and told her I got through to, not the respondent, but Mr. Hardman, respondent's attorney, informed them that – I got through to him, informed him that she was willing to take the offer.  Then I called her back to tell her that I got through to Mr. Hardman and that he would be drawing up the agreement and sending it to her . . . I can't recall anything else besides that.

(*Id*.)  Importantly, Rogers noted that the completion of the agreement was communicated to Plaintiff:

> Q   Did you then notify Ms. Bullock that the offer had been accepted?
> A   Yes, conveyed it to her.
> Q   And what was her response?
> A   I can't recall.  She – accepted.

7

(Dep. Rogers, DE #21-2, p. 20.)

After the series of phone calls, Defendant mailed Plaintiff a document entitled "Confidential Settlement Agreement and General Release" ("Agreement and Release"). (Aff. Bullock, DE #19-2, ¶ 14; DE #19-8.) On September 3, 2013, Rogers was notified by Defendant's counsel that Plaintiff was refusing to sign the Agreement and Release because "she only agreed to drop a portion of her demand – $25,000, for Respondent's consideration for qualitative issues." (Dep. Rogers, DE # 19-7, p. 14.)

Plaintiff asserts that Defendant drafted the Agreement and Release without her authorization and that she immediately rejected the document once she received it. (Aff. Bullock, DE #19-2, ¶¶ 14,15; DE #19-6, p. 3; Dep. Rogers, DE # 19-7, pp. 14-15.) Rogers, on the other hand, testified that Plaintiff had specifically insisted he call Defendant to communicate her acceptance of their last offer (which she knew did not include any monetary compensation); he then conveyed that acceptance to Defendants, who drew up the Agreement and Release based on those communications. (Dep. Rogers, DE #21-2, pp. 18-19.)

Both parties agree that, ultimately, Plaintiff never received any qualitative consideration from Defendant. (Aff. Bullock, DE #19-2, ¶ 19.) Finally, it is undisputed

that Plaintiff retained counsel on September 11, 2013. (Aff. Bullock, DE #19-2, ¶ 16.) She then proceeded to file this lawsuit against Defendant. (DE #1.)

*Analysis*

An agreement to settle claims in a federal court is enforceable "just like any other contract." See *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (quoting *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002)). State law governs whether a contract to settle the case was made, and therefore, Indiana law applies here. See *Dillard,* 483 F.3d at 506 (holding any uncertainty over whether federal or state law applies to settlement issues in federal court has been "dispelled; it is state law.").

In Indiana, settlement agreements are governed by general contract law principles; an offer, acceptance, and consideration are all the elements that are normally required to create an enforceable contract. *Zimmerman v. McColley*, 826 N.E.2d 71, 76 (Ind. Ct. App. 2005). Settlement agreements are strongly favored in this state. *Sands v. Helen HCI, LLC*, 945 N.E.2d 176, 180 (Ind. Ct. App. 2011). The Supreme Court of Indiana has held that:

> if a party agrees to settle a pending action, but

then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement.

*Georgos v. Jackson*, 790 N.E.2d 448 (Ind. 2003) (citations omitted). In general, there is no requirement that a settlement agreement be in writing. *Sands,* 945 N.E.2d at 180 (citing *Estate of Skalka v. Skalka*, 751 N.E.2d 769, 771 (Ind. Ct. App. 2001)); see also *Int'l Creative Mgmt., Inc. v. D & R Entm't Co.*, 670 N.E.2d 1305, 1312 (Ind. Ct. App. 1996). "If one party transmits a clear and unambiguous settlement offer which is accepted by the other party . . . the parties have reached a binding settlement agreement." *Pohl v. United Airlines, Inc.*, 110 F.Supp.2d 829, 837 (S.D. Ind. 1999) (internal quotation marks and brackets omitted), aff'd, 213 F.3d 336 (7th Cir. 2000). The parties must mutually assent to be bound, and it is their outward manifestation of that intent, which is determined from all of the circumstances surrounding the case, that matters. *Zimmerman*, 826 N.E.2d at 77. "A court does not examine the hidden intentions secreted in the heart of a person; rather it should examine the final expression found in conduct." *Id*. While some litigants believe that "they can change their mind at any time before they actually sign the settlement agreement[,] . . . that perception is often unfounded in the law." *Pohl v. United Airlines, Inc.*, 213

F.3d 336, 337 (7th Cir. 2000) (affirming the district court's enforcement of a settlement agreement).

Plaintiff argues that summary judgment should be granted in her favor with respect to Defendant's counterclaim because, according to Plaintiff, it is undisputed that there was no offer to settle, no acceptance or mutual assent, no consideration, and no written agreement. Defendant argues that there is indeed evidence in the record that an enforceable settlement agreement was reached and, as such, summary judgment is inappropriate at this juncture. Because factual disputes exist, the Court will draw all reasonable inferences in Defendant's favor when analyzing the parties' arguments.

As an initial matter, while Plaintiff argues that the settlement agreement is not enforceable because it was not reduced to writing and signed by both parties as required by the Indiana Rules for Alternative Dispute Resolution (the "IRADR"), the Court agrees with Defendant that the IRADR do not apply here. In *Vernon v. Acton*, the case relied upon by Plaintiff to support her position, the Supreme Court of Indiana determined that the parties' settlement agreement was governed by the IRADR and that it needed to be reduced to writing and signed by all parties to be enforceable. See generally *Vernon v. Acton*, 732

11

N.E.2d 805 (Ind. 2000). However, in so ruling, the court specifically pointed out that the IRADR only applied to the pre-suit mediation because, prior to the actual mediation, the parties had signed a written agreement to mediate that specifically incorporated the IRADR. *Id*. at 807-08 (citing *Anderson v. Yorktown Classroom Teachers Ass'n*, 677 N.E.2d 540, 542 (Ind. Ct. App. 1997)). The court noted that, by their own terms, the IRADR did "not apply to a mediation not instituted pursuant to judicial action in a pending case." *Id*. at 808, n. 5; see also Ind. A.D.R. R. 1.4. The IRADR have subsequently been amended to include a section related to optional early (i.e. pre-suit) mediation, but parties are only afforded the IRADR's protections[1] if they comply with its requirements. See Ind. A.D.R. R. 8. Specifically, Rule 8.3 provides that:

> *Before* beginning a mediation under this Rule, participants *must* sign a written Agreement To Mediate substantially similar to the one shown as Form A to these rules. This agreement must provide for confidentiality in accordance with Alternative Dispute Resolution Rule 2.11; it must acknowledge judicial immunity of the mediator equivalent to that provided in Alternative Dispute Resolution Rule 1.5; and it must require that all provisions of any resulting mediation settlement agreement must be written and signed by each person and any attorneys participating in the mediation.

---

[1] For example, parties that utilize optional early mediation are only bound to written settlement agreements that are signed by each party. Ind. A.D.R. R. 8.6.

12

Ind. A.D.R. R. 8.3 (emphasis added). Here, there is no evidence in the record that the parties entered into a written agreement to mediate prior to the actual pre-suit mediation session. Thus, the IRADR do not apply, and there is no requirement that the settlement agreement needed to be signed in order to be enforceable. See *Sands*, 945 N.E.2d at 180.

Next, while Plaintiff argues that there is no evidence that any elements of a contract existed here, the Court disagrees. Viewing the facts in the light most favorable to Defendant, once Rogers had determined that the parties were at a stalemate, he dismissed Defendant from the mediation session and advised Plaintiff that Defendant's last offer, which included qualitative measures but no financial compensation, would likely remain on the table post-mediation. Shortly thereafter, Rogers and Plaintiff spoke on the phone, and Plaintiff agreed to "accept" Defendant's last offer, exactly as it was previously communicated during the mediation, and to settle all of her claims. While the terminology used by both Rogers and the parties to describe the situation is convoluted, in essence, if Rogers' testimony is believed, Plaintiff's express directive to Rogers and his subsequent

communication to Defendant could reasonably be considered a counter-offer by Plaintiff to Defendant, with clear and unambiguous terms identical to those last offered by Defendant and rejected by Plaintiff during the formal mediation.  Of course, Plaintiff vehemently insists that she never wavered in her position that any agreement needed to contain monetary compensation and that qualitative measures were only an "intermediate step" towards resolution; she argues that Defendant had "no reasonable basis" to believe that she would make such a drastic shift in her settlement demands in such a short period of time.  Yet, according to Rogers' testimony, Plaintiff did just that and urged him to call Defendant immediately to convey her position, so he did.[2]

As to acceptance of Plaintiff's oral counter-offer, there is evidence in the record to suggest that Defendant manifested assent when its counsel volunteered to memorialize the settlement terms by drafting the Agreement

---

[2] Plaintiff argues, without citing to any law, that the agreement is invalid because Rogers was not authorized to transmit her position to Defendant.  However, according to Rogers, Plaintiff specifically insisted that he immediately contact Defendant in order to do so.  The Court agrees with Defendant that Plaintiff's express directive to Rogers seemingly authorized him to be the "conduit of her communications."  Because Plaintiff has failed to cite to any relevant case law and has failed to file a reply, any argument to the contrary is waived.

14

and Release.[3]  According to Rogers, after he communicated Plaintiff's position to Defendant's counsel:

> A  He said—he said a phrase and—and words to the effect, "You're kidding me?"  And I told him no, that that's what she would do.
> Q  And his response to that?
> A  He would—he would draw up the settlement agreement.

(Dep. Rogers, DE #21-2, p. 19.)  Rogers then contacted Plaintiff to inform her of Defendant's acceptance:

> Q  Did you then notify Ms. Bullock that the offer had been accepted?
> A  Yes, conveyed it to her.

(*Id.* at 20.)  Again, while Plaintiff maintains that it is "indisputable" that either party intended to be bound by such an agreement, the evidence in the record as described above indicates otherwise.  See *Zimmerman*, 826 N.E.2d at 77 ("A court does not examine the hidden intentions secreted in the heart of a person; rather it should examine the final expression found in conduct.")

Finally, as to Plaintiff's assertion that it is undisputed that no consideration existed at the time of

---

[3]  According to Defendant (as supported by Rogers' testimony), the draft of the Agreement and Release was simply a memorialization of the terms that had been agreed upon.  If Rogers' testimony is believed, the clear and unambiguous terms of the agreement were understood and agreed upon by the parties at the conclusion of the series of phone calls. See *Pohl*, 110 F.Supp.2d at 837-38 (oral settlement agreement was enforceable where the later drafted "written document prepared by the attorneys for final execution by the parties was not an attempt at further negotiations between the parties.").

15

contracting, she is mistaken. According to Rogers' testimony, Defendant promised to provide Plaintiff with a neutral employment reference, central point of contact, and expungement of her records in return for Plaintiff's promise to relinquish her discrimination claims against Defendant. This is exactly the type of "bargained for exchange" that valid consideration contemplates. See *Wagler v. West Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 379 (Ind. Ct. App. 2012). The fact that one or both parties ultimately failed to perform those promises is irrelevant to the issue of contract formation.

In sum, despite Plaintiff's assertion to the contrary, as outlined above, material factual disputes exist regarding the formation of a valid settlement agreement between the parties that precludes summary judgment in her favor.

CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaim, filed by Plaintiff on August 29, 2014 (DE #18), is **DENIED**.

**DATED: March 27, 2015**     /s/ RUDY LOZANO, Judge
                                                   **United States District Court**